UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL NOLAN,

                    Plaintiff,                      **COMPLAINT**

v.                                       Civil Action No. **21-cv-922**

WESTERN REGIONAL OFF TRACK BETTING
CORPORATION, RICHARD D. BIANCHI,
Individually and in his capacity as Chairman of the
WROTB Board of Directors, and HENRY WOJTASZEK,
Individually and as President of WROTB,

                    Defendant(s).

_____

      Plaintiff MICHAEL NOLAN ("Plaintiff"), by and through his attorneys, HoganWillig,

PLLC, as and for his Complaint herein respectfully alleges as follows:

## PARTIES

      1.      Plaintiff MICHAEL NOLAN is a natural person residing at 14979 Horseshoe

Trace, West Palm Beach, Florida 33414.

      2.      Defendant WESTERN REGIONAL OFF TRACK BETTING CORPORATION

("WROTB") is a public benefit corporation organized and existing under the laws of the State of

New York and established pursuant to Article 5 of the New York State Racing, Pari-Mutuel

Wagering and Breeding Law,[1] with its principal offices located at 8315 Park Drive, County of

Genesee, City of Batavia, State of New York, and within the jurisdiction of the United States

District Court for the Western District of New York.

---

[1] Originally, New York Unconsolidated Laws § 8111, et seq.

3.     Defendant RICHARD D. BIANCHI is a natural person residing at 1678 Edgemere Drive, County of Monroe, City of Rochester, State of New York, within the jurisdiction of the United States District Court for the Western District of New York, and at all relevant times herein was the Chairman of the Board of Directors of WROTB.

4.     Defendant HENRY WOJTASZEK is a natural person residing at 620 E. Goundry Street, County of Niagara, City of North Tonawanda, State of New York, within the jurisdiction of the United States District Court for the Western District of New York, and at all relevant times herein was President and Chief Executive Officer of WROTB.

## JURISDICTION

5.     Jurisdiction is proper in the United States District Court pursuant 28 U.S.C. §§ 1331 and 1343(a)(3) & (4) and 42 U.S.C § 1983, the Constitution of the United States and the Court's supplemental and pendent jurisdiction pursuant to 28 U.S.C. § 1367 for the Plaintiff's State claims herein.

6.     A Notice of Claim was duly served on Defendant WROTB relative to all causes of action for which the service of a Notice of Claim is, or may be, a prerequisite, attached hereto, with Plaintiff's Verification, as **Exhibit A.**

7.     Said Notice of Claim was served on Defendants on or about September 21, 2020.

8.     More than thirty (30) days have elapsed from the date the Notice of Claim was served, and Defendant WROTB has neglected and refused to make payment of the claim.

## VENUE

9.     Venue for this action is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside within this District.

## FACTS GIVING RISE TO THIS ACTION

### Plaintiff's Employment History with WROTB

10.     Plaintiff was first employed by WROTB on May 26, 2011, was promoted to Executive Vice President of Administration and Operations later in 2011 and was further promoted to Chief Operating Officer of WROTB in June of 2017.

11.     As Chief Operating Officer, Plaintiff's duties included supervising the day-to-day operations of WROTB, supervising operational department directors within the WROTB, participating in Board Meetings and other management functions, and taking instructions from, and reporting to, President Wojtaszek and the other policymakers of WROTB consisting of the Board of Directors.

12.     At present and at all times relevant herein, the WROTB Board of Directors consists of seventeen (17) seats, filled by individuals appointed by and representing the following fifteen (15) counties in addition to the City of Buffalo and the City of Rochester: Cattaraugus, Cayuga, Chautauqua, Erie, Genesee, Livingston, Monroe, Niagara, Orleans, Oswego, Schuyler, Seneca, Steuben, Wayne and Wyoming ("Board").

13.     As part of his duties as WROTB's Chief Operating Officer, Plaintiff was also appointed to serve as, and considered, WROTB's "FOIL Officer," as well as WROTB's Director of Ordering and Purchasing.

14.     Plaintiff, as WROTB's "FOIL Officer,"[2] was responsible for providing to the public, and responding to all lawful inquiries concerning, access to WROTB records and information within the scope of inquirers' entitlement.

---

[2] New York Public Officers Law Article 6, § 87.

15.   Reflective of Plaintiff's vigor and the high standards to which Plaintiff held himself in the performance of his various job duties, Plaintiff consistently received excellent annual Employee Performance Evaluations, until Defendant Wojtaszek scored him uncharacteristically low, for the first time, in Plaintiff's 2019 Employee Performance Evaluation, issued shortly before Plaintiff was terminated by WROTB.

16.   Plaintiff remained employed as Chief Operating Officer and FOIL Officer of WROTB until on or about December 18, 2020, when he was formally terminated from employment.

**WROTB History of Investigations**

17.   During Plaintiff's tenure as an employee of WROTB, there have been several investigations into WROTB's operations and the actions taken by several Board members— including investigations conducted by the Federal Bureau of Investigation ("FBI"), United States Attorney's Office for the Western District of New York, New York State Comptroller's Office, New York State Gaming Commission, and various District Attorneys' Offices, regarding the matters of concern enumerated herein.

18.   Upon information and belief, the investigations by the above agencies concerned matters which include, but are not limited to: (1) the provision of benefit-rich health insurance benefits to WROTB Board members; (2) the awarding of lucrative contracts by WROTB to politically-connected entities associated with WROTB; (3) the appointment of a certain politically connected Board member for the sole purpose of providing said Board member with health insurance; (4) the improper use of video lottery terminal ("VLT") purse funds; and (5) the distribution and personal use of luxury box and event tickets purchased by WROTB to friends, family, and political associates.

19.     Upon information and belief, at certain times relevant herein, several media inquiries were made into WROTB practices—including but not limited to trips taken by Defendant Wojtaszek with another WROTB officer to Phoenix, Arizona at WROTB expense to attend an industry conference wherein Defendant Wojtaszek and the other WROTB officer would allegedly drive to Las Vegas, Nevada for purely recreational purposes and not engage in the legitimate conference activities.

20.     Upon information and belief, at certain times relevant herein, in or about February of 2019 former New York State Senator George Maziarz publicly voiced accusations of wrongdoing against WROTB and Defendant Wojtaszek.

21.     Upon information and belief, at certain times relevant herein, there was a separate and distinct investigation into the conduct of Defendant Wojtaszek regarding bid-rigging in Niagara County, by the office of the Monroe County District Attorney, which involved certain vendors and contractors who do business with WROTB.

## Plaintiff's Concerns Over WROTB Actions

22.     During the course of the investigations by the above-mentioned agencies, media, and former political appointees, Plaintiff had significant concerns about the actions of WROTB and the named-Defendants, including but not limited to: WROTB board members receiving health insurance, the awarding of contracts by WROTB to politically connected entities; the appointment of certain WROTB board members for the sole purpose of receiving health insurance; improper use of the VLT purse funds; and the distribution of luxury box and event tickets to WROTB friends and family members.

23.     In or around the same time of these investigations, in or around February and/or March of 2019, Plaintiff communicated and expressed concerns, both orally and in writing,

regarding the above-referenced actions and conduct to and with the WROTB Board, Defendant Wojtaszek, and Defendant Bianchi.

24.     Specifically, at the February and/or March 2019 WROTB Board meeting(s), Plaintiff spoke, in Executive Session, to several WROTB Board members, including, but not limited to, Defendants Wojtaszek and Bianchi, concerning topics including, but not limited to: (1) the awarding of contracts to certain entities; (2) negative press against WROTB; and (3) WROTB Board members obtaining health insurance.

25.     In addition, on or about March 1, 2019, Plaintiff sent an e-mail to an agent/representative of Defendant WROTB, and WROTB Board member, Philip Barnes, that detailed Plaintiff's concerns regarding Defendants' activities.

26.     Following these discussions and disclosures, the WROTB Board directed Plaintiff and another WROTB Board member to retain outside counsel to determine the legalities of the insurance being provided to the part time WROTB board members.

27.     Plaintiff retained and subsequently cooperated with—including but not limited to presenting for interviews—the law firm of Barclay Damon LLP ("Barclay") to discuss the logistics of WROTB offering health insurance to its Board members.

28.     After investigation, Barclay formally opined that the health insurance being provided to WROTB Board members was improper and should be discontinued.

29.     Upon information and belief, however, Defendants did not, and have still not, discontinued health insurance to WROTB Board members.

30.     In and around the same time, Plaintiff and another WROTB Board member, in the performance of their duties and satisfaction of their fiduciary obligations as ranking executives and Board members of WROTB, discussed the additional WROTB improprieties with additional

outside counsel separate from Barclay, which has been retained only to investigate WROTB's provision of health insurance benefits.

31.     These discussions included, but were not limited to, the awarding of contracts by WROTB to politically connected entities; the appointment of WROTB Board members for the sole purpose of receiving health insurance; improper use of VLT purse funds; and distribution of luxury box and event tickets to friends and family members.

32.     After engaging in the above discussions with counsel, Plaintiff again reported back to the WROTB Board of Directors—specifically Defendants Wojtaszek and Bianchi—concerning outside counsel's findings of illegality of these actions.

## **WROTB's Failure to Respond to Plaintiff's Concerns**

33.     Plaintiff's concerns in general were, upon information and belief, taken by Defendants Wojtaszek and Bianchi to be a threat, rather than an observation of policies and procedures that needed changing, and Defendants Wojtaszek and Bianchi's aggression toward and ostracism of Plaintiff became even more intense.

34.     At all times herein, Defendants were unwilling to listen to, act on, and/or address irregularities, bad practices, and possible illegalities that were called to their attention by Plaintiff and another member of the Board of Directors.

35.     Defendants, at all times relevant herein, did not have a mechanism or policy in place concerning "whistleblowers" and the protection of well-intentioned employees who were looking out for the best interests of the taxpayers and the public by calling irregularities to the attention of authorities.

**Plaintiff's Involvement in Third-Party Investigations Concerning WROTB**

36.     After voicing his concerns over Defendants' actions directly to Defendants, Plaintiff was contacted by authorities, including, but not limited to, the FBI and the United States Attorney's Office for the Western District of New York.

37.     Upon information and belief, various officers, directors, and employees of WROTB were also questioned by some or all of the aforementioned authorities, which authorities appear to have been (and continue to be) working together and collaboratively, at which time, some or all of the WROTB interviewees referenced Plaintiff as a person who had detailed operational knowledge of the workings of the WROTB, and who may have insights into the matters these agencies were and/or are investigating.

38.     Upon information and belief, the WROTB interviewees who referred the authorities to Plaintiff, indicated that Plaintiff was not only well informed, but was also honest and would not lie.

39.     Plaintiff did not initially contact the authorities; the FBI contacted Plaintiff based on what the FBI and other authorities learned from the WROTB interviewees.

40.     In addition to being contacted by the FBI, Plaintiff was also served with a subpoena requiring him to appear before a grand jury on October 3, 2019, to provide testimony relative to the aforementioned investigations.

41.     In and around this same time, Plaintiff retained personal independent counsel to protect his interests and to guide him in acting most appropriately.

42.     Defendant WROTB was advised that Plaintiff sought personal independent counsel relative to the aforementioned investigations.

43.     Plaintiff's attorneys' fees incurred with independent counsel are legally the responsibility of Defendant WROTB pursuant to the Public Officer's Law.

44.     Plaintiff did not request or receive immunity before speaking with the authorities, only spoke the truth, and all truthful answers were consistent with Plaintiff's desire to correct flawed policies and improper practices for the good of the WROTB.

45.     During these investigations and interviews, Plaintiff maintained at all times that certain practices at the WROTB engaged in by certain officers and directors were irregular, unethical, ill-advised, and contrary to official policies, legal opinions, and mandates.

46.     Plaintiff did not form or convey any opinions as to whether the aforementioned practices were in violation of any criminal statutes.

47.     Plaintiff was also concerned with improper use of WROTB owned cars and cell phones, and such concern was heightened by FOIL requests by certain media members for data on such car and cell phone usage.

48.     Plaintiff cooperated with the FBI, United States Attorney's Office for the Western District of New York, and other collaborating investigative agencies and spoke to and met with the referenced agencies and answered the questions they had and gave direct and truthful answers to all questions posed by them.

**Plaintiff's Discussions with Defendants Concerning the Investigations**

49.     Plaintiff did honestly and candidly communicate with Defendants that he was in communication with such investigative agencies, speaking with such agencies at the suggestion of other WROTB personnel.

50.     Plaintiff was truthful with WROTB officers and directors regarding the contact by the FBI and collaborating agencies, and informed his superiors, directly and through WROTB

counsel, that he was contacted, and advised that he had answered all questions put to him by the collaborating authorities truthfully.

51.     Even before Plaintiff substantively advised Defendants as to what Plaintiff told the investigative agencies, Defendants Wojtaszek and Bianchi reacted as though horror-stricken upon hearing the phrase from Plaintiff that "all I told them was the truth."

52.     Even before Plaintiff substantively advised Defendants as to what Plaintiff specifically told the investigative agencies, and only that all he told them "was the truth," Defendants Bianchi and Wojtaszek reacted with what appeared to Plaintiff to be intense anger, hostility, hatred, and vitriol towards Plaintiff.

53.     After his interviews with the FBI and other collaborating agencies, upon information and belief, outside counsel was engaged at the instance of Defendant Henry Wojtaszek, in consultation with Defendant Richard Bianchi, and allegedly on behalf of the WROTB Board of Directors.

54.     Plaintiff was instructed that he was required to meet with this outside counsel and to disclose to this outside counsel everything that Plaintiff discussed with the FBI and other collaborating investigative agencies.

55.     This outside counsel interviewed Plaintiff and Plaintiff's attorneys and prepared a summary of interviews with Plaintiff and Plaintiff's attorneys in a report.

56.     Upon information and belief, access to the summary of interviews and report, which was in excess of 300 pages, prepared by outside counsel was restricted such that the members of the Board of Directors each had one hour to read and absorb the contents thereof, and needed to return the copies of the report they were given, to that outside counsel and were not permitted to make a copy for themselves.

57.     Upon information and belief, the 300+ page report submitted by outside counsel and provided to the members of the WROTB Board of Directors on a limited basis was narrowly confined to the specific subject matter of the interviews by outside counsel with Plaintiff and Plaintiff's lawyers and the subjects that were discussed with the FBI and collaborating investigating agencies.

58.     Plaintiff was thereafter advised by Defendants Bianchi and Wojtaszek that the legal fees generated by Plaintiff's retention of counsel for advice on how to carry out his duties amidst conflicting mandates, and how to truthfully respond to questions by the collaborating law enforcement agencies under these conflicting circumstances, would not be covered by WROTB— an amount totaling more than $80,000.00.

### Defendant's Retaliation Against Plaintiff

59.     In direct response to Plaintiff's voicing concerns over Defendants' actions and disclosing that he was truthful when questioned by the FBI and collaborating authorities and speaking to their representatives and agents, Defendant WROTB—acting through Defendants Bianchi and Wojtaszek—swiftly, aggressively, and austerely retaliated against Plaintiff and engaged in an ongoing and continuous series of acts and course of conduct involving harassment, isolation, ostracism, belittling, adverse employment actions, and intimidation consisting of, but not limited to:

      a)  Excluding Plaintiff from contact with Defendants Wojtaszek and Bianchi;

      b)  Excluding and isolating Plaintiff from the ordinary operational decisions that he was previously responsible for making and thereby constructively terminating Plaintiff;

      c)  Threatening Plaintiff with termination;

      d)  Subordinating Plaintiff to other WROTB employees who used to answer to Plaintiff;

e) Causing Plaintiff to be removed from the ordinary chain of command such that Plaintiff's subordinates, department directors, etc., now were directed by Defendants to go around Plaintiff and report directly to Defendant Wojtaszek;

f) Directing adverse employment actions to the Plaintiff;

g) Excluding Plaintiff from the ordinary meetings that used to be a regular part of Plaintiff's day-to-day routine;

h) Manifesting outward hostility by Defendants Wojtaszek and Bianchi as evidenced by a total "silent treatment" by Defendant Bianchi, and a near total "silent treatment" by Defendant Wojtaszek;

i) Providing poor performance ratings and evaluations that were knowingly false;

j) Subjecting Plaintiff to a Personnel Improvement Plan ("PIP") imposing strict remediation goals that were entirely uncalled for and unnecessary, and in failing to follow up on the PIP remediation goals with Plaintiff;

k) Discouraging Plaintiff from exploring what Plaintiff considered "bad policies" and shining lights on them;

l) Cutting Plaintiff off from any data that Plaintiff was concerned could result in loss of pension for certain WROTB personnel, and which Plaintiff wanted to correct for the protection of those WROTB personnel who appeared to be engaging in the wrongful use of taxpayer money for their own entertainment;

m) Encouraging Plaintiff to resign from his employment under intense pressure;

n) Encouraging Plaintiff to resign just three (3) years short of the lucrative vesting of Plaintiff's pension and lifetime health insurance benefits;

o) Wrongfully terminating Plaintiff;

p) Causing Plaintiff great emotional distress; and

q) Causing Plaintiff to endure great financial expenditures.

60.    With respect to being isolated and excluded from WROTB management on a continuous basis in response to Plaintiff's above-described communications with the FBI, United States Attorney's Office and collaborating investigative agencies, acting through Defendants

Bianchi and Wojtaszek, both of whom influence policy, WROTB has wrongfully and intentionally subjected the Plaintiff to the following:

    a) Excluded the Plaintiff from Board Meetings, Executive Session Meetings, closed door meetings and other management events on various dates between June 2019 and the date on which Plaintiff was terminated from his employment by WROTB; prior to communicating with the FBI, as mentioned hereinabove, Plaintiff would have been a participant in such meetings and events;

    b) Beginning in April 2019, and continuing through the date on which Plaintiff was terminated from his employment by WROTB, Defendant Bianchi ceased all communication with Plaintiff despite the mutual management responsibilities of Bianchi as Chairman of the Board of WROTB and of the Plaintiff as Chief Operating Officer;

    c) Plaintiff was removed as FOIL officer and instructed that he may not respond to any requests by anyone for information about WROTB or the acts or actions of any officer or director thereof;

    d) Plaintiff had been removed as a recipient of management-related emails for which Plaintiff would have been a recipient prior to the above-described communications with the FBI;

    e) Plaintiff was excluded from an important management-related meeting with the Delaware North Companies; prior to Plaintiff's above-described communications with the FBI, Plaintiff would have been an active participant in such a meeting;

    f) Plaintiff had been excluded from WROTB office social events and community service work which the Plaintiff attended and was an active participant in prior to Plaintiff's communications with the FBI–e.g., a WROTB "Employee of the Month" celebration and donating turkeys to the Food Bank of Western New York–despite Plaintiff having initiated WROTB's involvement with that community service;

    g) Plaintiff was caused to endure great emotional distress; and

    h) Plaintiff was caused to expend large sums of money in legal fees.

    61.    With respect to being subjected to threats relative to Plaintiff's employment status, the following occurred in direct response to the Plaintiff's above-described communications with the collaborating law enforcement agencies:

a) Defendant Bianchi made the statement "don't let the door hit you on the way out" in reference to Plaintiff in a meeting between Bianchi and other WROTB officers and Directors;

b) Following a Board of Directors meeting, a Board member who had personal knowledge of the adverse and retaliatory manner in which Defendants Bianchi and Wojtaszek reacted to the Plaintiff's above-described communications with the FBI, United States Attorney's Office and collaborating investigative agencies, stated to Plaintiff "watch your back" and further informed Plaintiff that Bianchi was "not happy" with Plaintiff and wanted to find a justification for firing Plaintiff from Plaintiff's position as Chief Operating Officer;

c) Defendant Wojtaszek made the written statement that all WROTB employees are "at will employees", thereby threatening Plaintiff by referring to said Defendant's authority to fire Plaintiff from Plaintiff's position as Chief Operating Officer at WROTB;

d) Plaintiff refused to voluntarily resign his position, but was ultimately wrongfully terminated;

e) Plaintiff was caused to endure great emotional pain, suffering and distress; and

f) Plaintiff was caused to expend large sums of money in legal fees.

62.    Plaintiff was threatened with and subjected to adverse employment action, was ostracized and isolated, and refused to voluntarily resign.

63.    With respect to adverse employment action of WROTB concerning Plaintiff, WROTB, acting through Defendants Bianchi and Wojtaszek, subjected Plaintiff to the following in response to Plaintiff's above-described communications with the collaborating investigating law enforcement authorities:

a) Plaintiff was removed from the Plaintiff's positions of Purchasing Officer, Records Officer, and FOIL Officer and was prevented from responding to Freedom of Information Law ("FOIL") and Open Meetings Law requests submitted to WROTB;

b) A new WROTB human resources rule was implemented by Defendant Wojtaszek which required Plaintiff to work on weekends;

c) Plaintiff was not given a raise in salary for 2020, and was given a poor employee evaluation score for 2019, despite having received a raise in salary and an above-average employee evaluation score for each of the prior eight (8) years at WROTB;

d) Plaintiff's 2020 salary was reduced by 50% during COVID-19 while the 2020 salaries of other WROTB employees remained at 100%;

e) Plaintiff was wrongfully terminated;

f) Plaintiff was caused to endure great emotional distress, pain and suffering; and

g) Plaintiff was caused to expend large sums of money in legal fees.

64.    By reason of the foregoing, Plaintiff has been, and continues to be, injured and damaged as set forth herein.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST ALL DEFENDANTS:

### VIOLATION OF FIRST AMENDMENT TO UNITED STATES CONSTITUTION

65.    The Plaintiff repeats and realleges paragraphs "1" through "64" as if fully set forth herein.

66.    Prior to the adverse employment actions set forth herein, Plaintiff, in his capacity as the Chief Operating Officer of Defendant WROTB, supervised the day-to-day operations of Defendant WROTB, and carried out (but did not formulate or set) policy for Defendant WROTB, as that function was reserved to, and performed by, the WROTB Board of Directors, and Defendant Wojtaszek.

67.    In discussing with, and/or providing information to, the respective law enforcement agencies investigating Defendant WROTB concerning the matters raised hereinabove, Plaintiff was speaking as a private citizen on matters of public concern; by reason

thereof, Plaintiff's statements were and are protected by the First Amendment to the United States Constitution.

68.     Plaintiff made no attempt to hide from Defendants the exercise of his First Amendment right; indeed, Plaintiff honestly and candidly communicated to Defendants that he had met with the law enforcement agencies, both directly and by and through counsel for Defendant WROTB.

69.     However, as a direct result of, and in retaliation for, Plaintiff's exercise of his First Amendment right to speak as a private citizen on matters of public concern, Plaintiff was subjected to the adverse employment actions set forth herein, all of which ultimately culminated in Defendants' unlawful and improper termination of Plaintiff's employment on or about December 18, 2020.

70.     Plaintiff's statements, which are protected under the First Amendment, were the direct motive for, and cause of, and/or were a substantial motivating factor for, the adverse employment actions and other severe workplace misconduct to which Plaintiff was subjected by Defendants.

71.     Defendants' retaliatory conduct, which ultimately culminated in the termination of Plaintiff's employment on or about December 18, 2020, was committed in violation of Plaintiff's First Amendment rights, as applied to the States via the Fourteenth Amendment and 42 U.S.C. § 1983, and were taken in response to Defendant WROTB's custom and policy of deterring speech by an employee disclosing Defendants' wrongdoing, and to punish the cooperating and/or "whistle-blowing" employee with adverse employment actions, up to and including Plaintiff's termination.

72. By reason of the foregoing, Defendants' joint conduct in retaliating against Plaintiff, which ultimately culminated in the termination of Plaintiff's employment on or about December 18, 2020, was and is in direct violation of the First Amendment to the United States Constitution.

73. By reason of the foregoing, Plaintiff has been, and continues to be, injured and damaged as set forth herein, and Plaintiff is entitled to relief, under and pursuant, including but not limited, to 42 U.S.C. §§ 1983 and 1988.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT WROTB:

### VIOLATION OF CIVIL SERVICE LAW § 75-b(2)(a)

74. The Plaintiff repeats and realleges paragraphs "1" through "73" as if fully set forth herein.

75. In disclosing and/or providing information to the collaborating investigative law enforcement agencies, including the FBI, New York State Gaming Commission, United States Attorney's Office, and New York State Comptroller that certain members of the Board of Directors of WROTB who are not employed on a daily basis by WROTB were receiving free health insurance at the expense of WROTB, and disclosing and confirming additional wrongdoing, Plaintiff was cooperatively imparting that which he reasonably believed to be improper governmental action by a Public Benefit Corporation taking place at WROTB with the knowledge and consent of Defendants.

76. Defendants were aware of the aforementioned issues, and the illegality and impropriety of same, by virtue of Plaintiff's efforts in reporting same as set forth in greater detail herein.

77.     Defendants were given a reasonable time to investigate and correct the problems that Plaintiff and others brought to Defendants' attention prior to the interactions between Plaintiff and the law enforcement agencies set forth herein.

78.     Similarly, although reported by Plaintiff to Defendants as stated above, reporting would have been, and ultimately was, futile as those receiving the reports were the Defendants engaged in the subject behavior.

79.     By engaging in a continuing campaign of: (1) retaliation against Plaintiff by excluding the Plaintiff from Board and other management-related meetings; (2) otherwise isolating and constructively discharging the Plaintiff; (3) threatening Plaintiff with termination of employment and ultimately terminating Plaintiff's employment; and (4) taking adverse employment action against Plaintiff as set forth in greater detail herein, all in direct response to the Plaintiff's aforementioned disclosure to the collaborating investigating law enforcement agencies, concerning improper governmental and corporate (Public Benefit) action, WROTB violated Section 75-b(2)(a) of the New York Civil Service Law.

80.     By reason of the foregoing, Plaintiff has been, and continues to be, injured and damaged as set forth herein, and Plaintiff is entitled to relief in accordance with, including but not limited to, Section 740(5) of the New York Labor Law.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST DEFENDANTS BIANCHI AND WOJTASZEK:

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

81.     The Plaintiff repeats and realleges paragraphs "1" through "80" as if fully set forth herein.

82.     In retaliating against Plaintiff in the manner described above in response to Plaintiff's disclosure and/or provision of information to the collaborating investigating law

{H3080778.1}                                          18

enforcement agencies of what the Plaintiff reasonably believed to be improper governmental action taking place at the WROTB, Defendants Bianchi and Wojtaszek, individually and in their capacities with WROTB, engaged in a deliberate, relentless and malicious campaign of harassment and hostility toward Plaintiff.

83.     Plaintiff was subjected to the aforesaid deliberate and malicious campaign of harassment by Defendants Bianchi and Wojtaszek on a continuing and ongoing basis from the time Plaintiff first informed Defendants of his contacts with the FBI and collaborating investigating agencies, through September 3, 2020 when Plaintiff's treating physician placed Plaintiff on medical leave for anxiety and depression caused by Defendants' actions, and continuing to at least December 18, 2020, the day Defendants wrongfully terminated Plaintiff.

84.     In retaliating against Plaintiff through the aforesaid deliberate and malicious campaign of harassment, Defendants Bianchi and Wojtaszek acted outside the scope of their duties as Chairman of the Board of Directors of WROTB and WROTB's President and Chief Executive Officer, and knowingly abused their authority with the wrongful intent to injure the Plaintiff.

85.     As a direct and proximate result of the aforesaid intentional tortious conduct of Defendants Bianchi and Wojtaszek, Plaintiff has been caused to suffer severe anxiety and emotional distress and, on the advice of Plaintiff's healthcare practitioners, to miss multiple days of employment at WROTB.

86.     By reason of the aforesaid continuous and deliberate campaign of harassment through the wrongful conduct of Defendants Bianchi and Wojtaszek, both individually and in their capacities with WROTB, resulting in the infliction of severe emotional distress, Plaintiff is entitled to receive damages and relief from said Defendants.

87.     By reason of the foregoing, Plaintiff has been, and continues to be, injured and damaged as set forth herein.

## AS AND FOR A FOURTH CAUSE OF ACTION
## AGAINST DEFENDANT WROTB:

## INDEMNIFICATION OF AND REIMBURSEMENT FOR ATTORNEYS' FEES

88.     The Plaintiff repeats and realleges paragraphs "1" through "87" as if fully set forth herein.

89.     At all times alleged herein, Plaintiff was acting within the scope of his public employment and duty on behalf of WROTB.

90.     The legal fees incurred by Plaintiff's retention of counsel was incident to Plaintiff's public employment and the conduct of his duties associated therewith.

91.     Plaintiff duly and properly submitted his bills and itemized billing statements to the WROTB designated legal counsel for payment.

92.     Plaintiff's retention of legal counsel was not for his own financial gain or benefit, but rather, to get guidance on how to respond to inquiries by investigative agencies, how to deal with fraudulent FOIL responses being given to the media and others by Defendants while Plaintiff was in the role of Chief Operating Officer, and how to reconcile his responsibilities to the WROTB Board of Directors with his duty of obedience to his direct supervisor, Defendant Wojtaszek, and Defendant Chairman Bianchi, and how to navigate the hostile employment environment.

93.     Pursuant to New York Public Officers Law, §§ 18 and 19, *et seq*., Defendant WROTB is required to reimburse Plaintiff for aforesaid legal fees.

94.     By reason of the foregoing, Plaintiff has been, and continues to be, injured and damaged as set forth herein.

{H3080778.1}

## AS AND FOR A FIFTH CAUSE OF ACTION
## AGAINST DEFENDANT WROTB:

### VIOLATION OF LABOR LAW § 740

95.     The Plaintiff repeats and realleges paragraphs "1" through "94" as if fully set forth herein.

96.     By the aforesaid WROTB Board Members and executives improperly procuring health care insurance free of charge as stated above, said WROTB Board Members and executives engaged in health care fraud as defined in Labor Law § 740(1)(g).

97.     As a direct result of Plaintiff's disclosure of such health care fraud to the appropriate investigative agencies, Defendant WROTB – acting through Defendants Bianchi and Wojtaszek – subjected Plaintiff to the above-described retaliatory personnel action in violation of Labor Law §§ 740(2)(a) and (b).

98.     Due to the aforesaid violation of Labor Law §§ 740(2)(a) and (b) by Defendants WROTB, Plaintiff is entitled to relief under, including but not limited to, Section 740(5).

99.     By reason of the foregoing, Plaintiff has been, and continues to be, injured and damaged as set forth herein

**WHEREFORE**, Plaintiff demands judgment as follows against the Defendants:

1.     **For the First Cause of Action, against Defendant WROTB, for violation of the First Amendment and 42 USC §§ 1983 and 1988,**

a)     Compensatory damages of not less than $4,500,000, including all damages sustained by the Plaintiff due to the aforesaid violation including, without limitation, all wages, benefits or any other remuneration to which the Plaintiff is otherwise entitled;

b)     Permanent injunctive relief preventing WROTB from continuing the aforesaid tortious and unconstitutional conduct; and

c)     Appropriate interest, the costs of this action and attorneys' fees incurred by the Plaintiff.

{H3080778.1}     21

2.      **For the Second Cause of Action, against Defendant WROTB, for violation of the NY Civil Service Law,**

a)      Compensatory damages of not less than $4,500,000, including all damages sustained by the Plaintiff due to the aforesaid conduct and violations, including, without limitation, all wages, raises, benefits or any other remuneration to which the Plaintiff is otherwise entitled;

b)      Permanent injunctive relief preventing WROTB from continuing the aforesaid conduct and violations; and

c)      Appropriate interest, the costs of this action and the attorneys' fees incurred by the Plaintiff.

3.      **For the Third Cause of Action, against Defendants Wojtaszek and Bianchi, both individually and in their capacities with WROTB, for Intentional Infliction of Emotional Distress,**

a)      Compensatory damages for emotional pain and suffering of not less than $4,500,000;

b)      Punitive damages in an amount not less than $1,000,000, as may be decided following the trial of this action; and

c)      Appropriate interest, the costs of this action and the attorneys' fees incurred by Plaintiff for the necessity of bringing this action.

4.      **For the Fourth Cause of Action, against Defendant WROTB, for Indemnification and reimbursement for attorneys' fees,**

a)      Compensatory, indemnification and reimbursement damages in an amount to be determined at trial.

b)      Appropriate interest, the costs of this action, and the attorneys' fees incurred by the Plaintiff for the necessity of bringing this action.

5.      **For the Fifth Cause of Action, against Defendant WROTB, for Violation of NY Labor Law §740,**

a)      An injunction to restrain continued violation of this section;

{H3080778.1}                                                22

b)    The reinstatement of the Plaintiff to the same position held before the retaliatory personnel action, or to an equivalent position;

c)    The reinstatement of full fringe benefits and seniority rights;

d)    All damages sustained due to the violation including, without limitation, the compensation for lost wages, benefits and other remuneration; and

e)    The payment of all reasonable costs, disbursements, and attorney's fees.

**6.    Such other and further relief as the Court and/or jury deems proper**.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial of all issues so triable.

DATED:    July 26, 2021
          Amherst, New York

HOGANWILLIG, PLLC

Steven M. Cohen, Esq.
Edward P. Yankelunas, Esq.
*Attorneys for Plaintiff*
2410 North Forest Road, Ste. 301
Amherst, New York 14068
(716) 636-7600