UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL NOLAN

                Plaintiff,

vs.

WESTERN REGIONAL OFF TRACK BETTING     Civil Action No.
CORPORATION, RICHARD D. BIANCHI,     21-cv-00922-WMS
Individually and in his capacity as Chairman of the
WROTB Board of Directors, and HENRY WOJTASEZK,
Individually and in his capacity as President of WROTB,

                Defendants.

_____


# REPLY MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS


**HODGSON RUSS LLP**
*Attorneys for Defendants*
Daniel C. Oliverio
Aaron M. Saykin
Matthew K. Parker
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: (716) 856-4000

**TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ...................................................................................................................................2

    I.    THE "CONTINUING HARM" DOCTRINE IS INAPPLICABLE
          AND DOES NOT SAVE NOLAN'S UNTIMELY CLAIMS .....................................2

    II.   NOLAN'S CLAIM FOR ATTORNEYS' FEES IS TIME-BARRED
          AND INAPPLICABLE ...............................................................................................4

    III.  NOLAN FAILS TO STATE A SECTION 1983 CLAIM ............................................5

        A.    Nolan's speech is not constitutionally protected ........................................5

        B.    There is no causal connection between Nolan's speech
              and any non-time-barred alleged adverse employment action ...............6

        C.    Nolan insufficiently pleads an official policy or custom of WROTB ......6

    IV.  NOLAN'S CONSTITUTIONAL CLAIM AGAINST BIANCHI
          AND WOJTASZEK INDIVIDUALLY ALSO FAILS ..................................................7

        A.    Nolan does not state an individual constitutional claim .........................7

        B.    Qualified immunity shields Bianchi and Wojtaszek from liability .........8

    V.   NOLAN FAILS TO PLEAD A CLAIM FOR INTENTIONAL INFLICTION
          OF EMOTIONAL DISTRESS ...................................................................................8

    VI.  NOLAN'S CIVIL SERVICE LAW § 75-(B)(2) CLAIM
          SHOULD BE DISMISSED ........................................................................................9

CONCLUSION...............................................................................................................................10

# **TABLE OF AUTHORITIES**

PAGE

**Federal Cases**

*Brown v. City of New York*,
   18-cv-570(FB)(PK), 2019 WL 5842321 (E.D.N.Y. Nov. 7, 2019) ......................................... 2

*Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*,
   411 F.3d 306, 314 (2d Cir. 2005) .......................................................................................... 6

*Chang v. Safe Horizons*,
   254 Fed. Appx. 838, 839 (2d Cir. 2007) ............................................................................... 6

*Dimitracopoulos v. City of New York*,
   26 F. Supp. 3d 200, 212 (E.D.N.Y. 2014) ............................................................................. 2

*Estes-El v. State Dep't of Motor Vehicles Office of Admin. Adjudication Traffic
   Violation Bureau*,
   No. 95 Civ. 3454 (JFK), 1997 WL 342481 (S.D.N.Y. 1997) ................................................ 7

*Gonzalez v. Hasty*,
   802 F.3d 212, 222 (2d Cir. 2015) .......................................................................................... 3

*Guity v. Uniondale Union Free Sch. Dist.*,
   No. 15-cv-5693-SJF-AKT, 2017 WL 9485647 (E.D.N.Y. Feb. 23, 2017) ............................ 7

*Harris v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*,
   230 F. Supp. 3d 88, 98 (E.D.N.Y. 2017) ............................................................................... 2

*Harris v. City of New York*,
   186 F.3d 243, 250 (2d Cir. 1999) .......................................................................................... 3

*Lewis Family Group Fund LP v. JS Barkats PLLC*,
   16-CV-5255(AJN)(JLC), 2021 WL 1203383 (S.D.N.Y. Mar. 31, 2021) .............................. 9

*Lozada v. County of Nassau*,
   6-CV-6302(JS)(AYS), 2021 WL 1209740 (E.D.N.Y. Mar. 31, 2021) .................................. 2

*Montero v. City of Yonkers, New York*,
   890 F.3d 386 (2d Cir. 2018) .................................................................................................. 7

*Neufeld v. Neufeld*,
   910 F. Supp. 977, 984 (S.D.N.Y. 1996) ................................................................................ 9

*Ortega v. New York City Off-Track Betting Corp.*,
   No. 97 Civ. 7582(KMW), 1999 WL 342353 (S.D.N.Y. May 27, 1999) ............................... 7

## **TABLE OF AUTHORITIES - cont'd**

PAGE

*Peterson v. New York City Dep't of Educ.*,
   No. 18-CV-1515 (ILG), 2020 WL 2559835 (E.D.N.Y. May 20, 2020)..............................9, 10

*Reid v. Sack*,
   No. 20-CV-1817(VM), 2021 WL 100490 (S.D.N.Y. Jan. 12, 2021) ........................................9

*Ross v. Breslin*,
   693 F.3d 300 (2d Cir. 2012)....................................................................................................6

*Zabar v. N.Y.C. Dep't of Educ.*,
   18 Civ. 6657 (PGG), 2020 WL 2423450 (S.D.N.Y. May 12, 2020)........................................8

**State Cases**

*Zimmer v. Town of Brookhaven*,
   247 A.D.2d 109, 113 (2d Dep't 1998).....................................................................................4

*Zoll v. Suffolk Regional Off-Track Betting Corp.*,
   259 A.D.2d 696 (2d Dep't 1999).............................................................................................4

**Federal Statutes**

42 U.S.C. § 1983.................................................................................................................................5

**State Statutes**

New York Civil Service Law § 75-b(2).........................................................................................10

**Rules**

Federal Rule of Civil Procedure 12(b)(6) .......................................................................................1

**PRELIMINARY STATEMENT**

Plaintiff Michael Nolan's ("Nolan") opposition confirms that his Complaint should be dismissed in its entirety. Nolan concedes dismissal of his official-capacity constitutional claims against Defendants Richard D. Bianchi ("Bianchi") and Henry Wojtaszek ("Wojtaszek") and his Labor Law § 740 claim against defendant Western Regional Off Track Betting Corporation ("WROTB"). He attempts to invoke the inapplicable "continuing violation" doctrine to save his time-barred claims.

Nolan also makes arguments that contradict his own admissions in the Complaint. For his First Amendment claim, Nolan argues here that his speech to the FBI and U.S. Attorneys' Office was not pursuant to his duties as an officer of WROTB. But in his claim for reimbursement of attorneys' fees, Nolan admits that the exact same speech was pursuant to his official duties as an officer of WROTB, which is required to seek reimbursement of those fees. And while it is clear Nolan was speaking pursuant to his official duties, which bars his First Amendment claim, Nolan is not entitled to reimbursement of his attorneys' fees under the Public Officers law because they were incurred in connection with a criminal, not civil, matter.

Nolan's final two causes of action also fail as a matter of law. He fails to plead a claim for intentional infliction of emotional distress because the conduct alleged is far short of the extreme and outrageous conduct required to state such a claim. And his Civil Service Law § 75-(b)(2) claim fails because, according to his own allegations and arguments, he could not have reasonably believed that WROTB providing health insurance to its Board members violated any law. The Court should dismiss Nolan's Complaint in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

**ARGUMENT**

I. **THE "CONTINUING HARM" DOCTRINE IS INAPPLICABLE AND DOES NOT SAVE NOLAN'S UNTIMELY CLAIMS**

Nolan does not dispute that his Notice of Claim is timely for only those claims that accrued after December 21, 2019. Dkt. 16 at 1-6. Nor does he dispute that he never served a proper and timely Notice of Claim concerning his termination with respect to the allegations and claims in his Complaint. *Id.* Instead, he attempts to rely on the "continuing harm" or "continuing violation" doctrine to save his untimely claims. *Id.* But the continuing harm doctrine does not apply to retaliation claims generally, or to Nolan's claims, specifically.

First, the continuing violation doctrine does not apply to Nolan's First Amendment retaliation claim. *See Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 212 (E.D.N.Y. 2014) ("For Federal and State law purposes the 'continuing violation' doctrine applies only to harassment claims. It is inapplicable to plaintiff's . . . retaliation claims."); *Lozada v. County of Nassau*, 6-CV-6302(JS)(AYS), 2021 WL 1209740, at *7 (E.D.N.Y. Mar. 31, 2021) (continuing violation doctrine inapplicable to plaintiff's First Amendment retaliation claim because the "doctrine . . . is inapplicable to . . . retaliation claims"); *Brown v. City of New York*, 18-cv-570(FB)(PK), 2019 WL 5842321, at *1 (E.D.N.Y. Nov. 7, 2019) (same). Indeed, one of the cases cited by Nolan recognizes this rule. Dkt. 16 at 2 (citing *Harris v. Bd. of Educ. of the City Sch. Dist. of the City of N.Y.*, 230 F. Supp. 3d 88, 98 (E.D.N.Y. 2017) ("[t]he 'continuing violation' doctrine . . . is inapplicable to . . . retaliation claims")).

Second, even if the continuing harm doctrine could apply to retaliation claims (it cannot),

it still would not apply to Nolan's claims.[1]  For the doctrine to apply, a plaintiff must allege at least some conduct that falls within the statute of limitations.  *See Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).  Here, all of the alleged retaliatory conduct in Nolan's Complaint occurred before the applicable limitations date of December 21, 2019.  Compl. ¶¶ 23-32, 36-40, 59-63.  Realizing this fatal issue, Nolan's opposition claims that his decision to take leave under the Family Medical Leave Act ("FMLA") on September 3, 2020 was the "last adverse, retaliatory act." Dkt. 16 at 5.  Nolan is incorrect.  The Complaint does not allege that Nolan's FMLA leave was a retaliatory, adverse employment action taken by Defendants.  Compl. ¶¶ 59-63.  Indeed, the only time Nolan mentions his FMLA leave in his Complaint he states his treating physician placed him on medical leave on September 3, 2020—not that Defendants took any adverse action against him.  *Id.* ¶ 83.  To the extent Nolan is arguing that the effects of the alleged retaliation contributed to his FMLA leave, that would still not save his time-barred allegations.  "The mere fact that the effects of retaliation are continuing does not make the retaliatory act itself a continuing one."  *Gonzalez v. Hasty*, 802 F.3d 212, 222 (2d Cir. 2015).

The only other act he references after December 21, 2019 was his termination.  But Nolan does not dispute that he served no Notice of Claim alleging that his termination was due to retaliation.  Instead, his second Notice of Claim alleges he was terminated because of a disability.  Dkt. 12-9.  Consequently, all of the causes of action in Nolan's Complaint accrued prior to the applicable limitations date of December 21, 2019 and must be dismissed as time-barred for failure to timely serve a proper notice of claim.  *Zoll v. Suffolk Regional Off-Track*

---

[1] Nolan's retaliation allegations form the basis of all of his causes of action, except for his claim for reimbursement of attorneys' fees.  Compl. ¶¶ 69, 71-72, 79, 82, 97.  Nolan's attorneys' fees claim is also time-barred.  *See* Point II, *infra*.

3

*Betting Corp.*, 259 A.D.2d 696, 696-97 (2d Dep't 1999).

**II.    NOLAN'S CLAIM FOR ATTORNEYS' FEES
        IS TIME-BARRED AND INAPPLICABLE**

Nolan's attorneys' fees claim is also time barred. He alleges he incurred attorneys' fees related to the grand jury subpoena he received from the U.S. Attorneys' Office and his interviews with the FBI and requested reimbursement of those fees in and prior to October 2019. Compl. ¶ 40-41, 91. Nolan's personal attorneys prepared a motion on his behalf for reimbursement and indemnification of his attorneys' fees in October 2019. Dkt. 12-10 at 4. Thus, Nolan's attorneys' fees claim accrued, at the latest, in October 2019—prior to the December 21, 2019 limitations period.

Substantively, Nolan does not dispute that New York Public Officers Law Section 18 applies only to civil, not criminal, matters. Pub. Off. L. § 18(3)(a); *Zimmer v. Town of Brookhaven*, 247 A.D.2d 109, 113 (2d Dep't 1998). Rather, he incorrectly contends that there is nothing in the record to establish that his attorneys' fees were related to criminal matters. Dkt. 16 at 7-8. Once again, Nolan is incorrect. Nolan received a subpoena to testify before a federal grand jury. Nolan himself has now put that subpoena in the record before this Court. Dkt. 16-2.

Federal grand juries must relate to *criminal* investigations. "Because the grand jury is a creature of the criminal process, it cannot be used to collect evidence to be used solely for civil purposes. Grand Jury Law and Practice, § 10:3 (Use of grand jury for civil purposes) (2d ed.). Further, "[b]ecause the grand jury may not conduct an investigation solely for civil purposes, it is clear that the government may not start or continue a grand jury inquiry where no criminal prosecution seems likely." *Id.* Accordingly, "most courts have stated that the grand jury must be used exclusively for criminal purposes, and that the prospect of possible civil remedies must play no part in the initiation or direction of the grand jury's investigation." *Id.* Therefore, the

4

issuance of the federal grand jury subpoena was, as a matter of law, for a criminal matter. Notably, the cases cited by Nolan are inapposite because they concern state, not federal, grand juries. Dkt. 16 at 7.

Nolan is not entitled to reimbursement or indemnification of his personal attorneys' fees under Public Officers Law Section 18 as a matter of law.

### III.   NOLAN FAILS TO STATE A SECTION 1983 CLAIM

#### A.   Nolan's speech is not constitutionally protected.

Nolan's opposition ignores a fundamental flaw—his own allegations confirm that his speech was pursuant to his official duties as an officer of WROTB, not as a private citizen on a matter of public concern. The Complaint admits that Nolan's interviews with investigative agencies concerning alleged WROTB improprieties were "in the performance of [his] duties and satisfaction of [his] fiduciary obligations as ranking executive[] and Board member[] of WROTB." Compl. ¶ 30. Nolan further admits that "[a]t all times alleged herein, Plaintiff was acting within the scope of his public employment and duty on behalf of WROTB." *Id.* ¶ 89.

Critically, Nolan seeks reimbursement of the attorneys' fees he incurred in connection with what he claims is protected speech. *Id.* ¶¶ 88-94. But as Nolan himself recognizes, he could only seek reimbursement of those fees if they were incurred pursuant to his duties as a WROTB officer. Dkt. 16 at 6-7. Public Officers Law Section 18 only applies if "the employee was acting within the scope of his public employment or duties." Pub. Off. L. § 18(3)(a). By asserting such a claim, Nolan has admitted his speech was not protected; he cannot argue, in the next breath, that his speech was unrelated to his duties as an officer of WROTB in order to seek reimbursement from WROTB for legal fees incurred in connection with that speech. His admissions in his own pleading are fatal to his Section 1983 claim.

Further, Nolan entirely ignores *Ross v. Breslin*, 693 F.3d 300 (2d Cir. 2012), which is directly on point. There, the Second Circuit found that the plaintiff's reports to the superintendent, her statements to an outside consultant/investigator, and her letter to Board members concerning alleged financial improprieties that she discovered in the ordinary course of performing her work were made pursuant to her job duties and not protected by the First Amendment. *Ross*, 693 F.3d at 304-08. The same result is required here.

### B. There is no causal connection between Nolan's speech and any non-time-barred alleged adverse employment action.

The only non-time-barred adverse employment action alleged by Nolan is his termination on December 18, 2020. That occurred well over a year after Nolan alleges he engaged in protected speech between February and October 2019. Compl. ¶¶ 23-32, 36, 40. Courts in this Circuit routinely hold that there is no causal connection or inference of retaliation between protected speech and an adverse employment action that occurs over a year after the speech. *See, e.g., Chang v. Safe Horizons*, 254 Fed. Appx. 838, 839 (2d Cir. 2007) (the plaintiff's termination "occurred almost one year after her complaint for discrimination, thus undermining any causal nexus based on temporal proximity"); *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005) (finding no causal connection when "more than a year passed" between the protected speech and the adverse action). And contrary to Nolan's contention (Dkt. 16 at 13), this issue can be decided on a motion to dismiss. *See Brown*, 2019 WL 5842321, at *2 (dismissing the plaintiff's First Amendment retaliation claim for lack of a causal connection on a Rule 12(b)(6) motion to dismiss). Moreover, Nolan's second Notice of Claim states that he was terminated because of a disability.

### C. Nolan insufficiently pleads an official policy or custom of WROTB.

Nolan's opposition merely parrots back the single, conclusory allegation in his Complaint that the alleged retaliatory actions of Bianchi and Wojtaszek were in response to an official

custom or policy of WROTB.  Dkt. 16 at 14 (citing Compl. ¶ 71).  As set forth in Defendants' Memorandum of Law (Dkt. 12-11 at 15-16), Nolan must plead an official custom or policy "with particularity and proof."  *Estes-El v. State Dep't of Motor Vehicles Office of Admin. Adjudication Traffic Violation Bureau*, No. 95 Civ. 3454 (JFK), 1997 WL 342481, at *4 (S.D.N.Y. 1997).  Threadbare, conclusory allegations of a custom or policy, such as Nolan's here, are insufficient as a matter of law.  *See Montero v. City of Yonkers, New York*, 890 F.3d 386, 403-04 (2d Cir. 2018); *Ortega v. N.Y.C. Off-Track Betting Corp.*, No. 97 Civ. 7582(KMW), 1999 WL 342353, at *6 (S.D.N.Y. May 27, 1999); *Estes-El*, 1997 WL 342481, at *4.

### IV.  NOLAN'S CONSTITUTIONAL CLAIM AGAINST BIANCHI AND WOJTASZEK INDIVIDUALLY ALSO FAILS

#### A.  Nolan does not state an individual constitutional claim.

Nolan's failure to state a Section 1983 claim against WROTB requires dismissal of his Section 1983 claim against Bianchi and Wojtaszek individually.  *See Guity v. Uniondale Union Free Sch. Dist.*, No. 15-cv-5693-SJF-AKT, 2017 WL 9485647, at *31 (E.D.N.Y. Feb. 23, 2017).

In any event, Nolan's termination from WROTB cannot establish a constitutional claim against Bianchi or Wojtaszek individually.  Bianchi and Wojtaszek were not "personally involved" in the non-time-barred alleged deprivation (*i.e.*, his termination).  *Williams v. N.Y.C. Dep't of Correction*, No. 19-CV-5200 (RA), 2020 WL 509180, at *8 n.8 (S.D.N.Y. Jan. 30, 2020).  Nolan does not dispute that Wojtaszek is not a member of the WROTB Board member and did not cast a vote to terminate Nolan's employment.  Dkt. 12-7.  Wojtasek's position as President and CEO of WROTB is not a basis for constitutional liability.  *Brown*, 2019 WL 5842321, at *3 ("the plaintiff cannot rely on [defendant's] high position as a basis for his individual liability") (citing *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) ("[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority.").  Further, Bianchi was one of 14 board members who

voted unanimously to terminate Nolan's employment.  He did not act alone, and he neither made the motion to terminate Nolan's employment nor seconded that motion.  Dkt. 12-7.  Notably, Nolan did not name any other Board members as defendants.

### B. Qualified immunity shields Bianchi and Wojtaszek from liability.

Nolan's failure to allege a violation of his constitutional rights means that Bianchi's and Wojtaszek's individual alleged conduct did not violate any clearly established constitutional right.  Thus, they are entitled to qualified immunity.  *Montero*, 890 F.3d at 402 (granting individual defendants' motion to dismiss under Rule 12(b)(6) on qualified immunity grounds); *Ross*, 693 F.3d at 304-05 (finding individual defendant entitled to qualified immunity because plaintiff "was speaking pursuant to her official duties and not as a private citizen, her speech was not protected by the First Amendment" and thus her constitutional "right was not clearly established at the time of the incident"); *see also Zabar v. N.Y.C. Dep't of Educ.*, 18 Civ. 6657 (PGG), 2020 WL 2423450, at *8-9 (S.D.N.Y. May 12, 2020).

### V. NOLAN FAILS TO PLEAD A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Nolan's opposition asks the Court not to decide the issue of whether the conduct alleged in his Complaint satisfies the rigorous, difficult standard to establish extreme and outrageous conduct required to state a claim of intentional infliction of emotional distress ("IIED").  Dkt. 16 at 18-21.  First, Nolan incorrectly asserts that the issue of whether the conduct alleged is extreme and outrageous is a question of fact reserved for the jury.  Courts routinely dismiss IIED claims for failure to meet the high pleading burden for that claim.  *See Lewis Family Group Fund LP v. JS Barkats PLLC*, 16-CV-5255(AJN)(JLC), 2021 WL 1203383, at *12 (S.D.N.Y. Mar. 31, 2021) ("Given the 'rigorous' requirements, courts often dismiss [IIED] claims under the 'extreme and outrageous conduct' prong as a matter of law."); *Reid v. Sack*, No. 20-CV-1817(VM), 2021 WL 100490, at *5 (S.D.N.Y. Jan. 12, 2021) (same); *see also Peterson v. N.Y.C. Dep't of Educ.*, No.

8

18-CV-1515 (ILG), 2020 WL 2559835, at *9 (E.D.N.Y. May 20, 2020) (rejecting plaintiff's request that her IIED claim be deferred for factual development as that would be incompatible with Rule 12(b)(6)).

Second, Nolan does not cite a single case where a court found that conduct similar to that alleged in his Complaint satisfied the extreme and outrageous prong of an IIED claim and survived a motion to dismiss. Dkt. 16 at 18-21. One of the cases Nolan does cite, however, notes that "[a] wide range of conduct—though offensive or even otherwise illegal—is not considered 'utterly intolerable in a civilized society' to permit a party to maintain a cause of action for intentional infliction of emotional distress," including conduct far worse than that alleged by Nolan. *See Neufeld v. Neufeld*, 910 F. Supp. 977, 984 (S.D.N.Y. 1996) (collecting cases in which conduct including firing an employee in a humiliating manner, racial discrimination, and sexual harassment was insufficient to satisfy the extreme and outrageous element as a matter of law) (cited by Nolan at Dkt. 16 at 2, 6).

The Complaint alleges that Bianchi and Wojtaszek excluded Nolan from contact and meetings; gave him the "silent treatment"; re-assigned his job duties; provided a poor performance rating; placed him on a Personal Improvement Plan; removed him as a recipient from certain emails; and required him to work weekends. Compl. ¶¶ 59-63. These are not "cherry pick[ed]" allegations, as Nolan contends. Dkt. 16 at 20. They are the allegations upon which Nolan bases his IIED claim. Compl. ¶¶ 59-63, 82. This alleged conduct is not close to the "extreme and outrageous" conduct Nolan must plead to state a claim for IIED.

### VI. NOLAN'S CIVIL SERVICE LAW § 75-(b)(2) CLAIM SHOULD BE DISMISSED

In a futile attempt to save his Civil Service Law § 75-(b)(2)(a)(ii) claim, Nolan contends he reasonably believed WROTB's provision of health insurance to its Board members violated

9

the law.  Dkt. 16 at 21-23.  Nolan refers to a legal memorandum he received from the law firm Barclay Damon (the "Barclay Damon Memo").  *Id.*  According to Nolan, however, the Barclay Damon Memo recommended that WROTB stop providing health insurance to Board members because it was not expressly authorized by statute.  *Id.* at 22.  Nolan does not even claim that the Barclay Damon Memo stated that providing health insurance to board members violated the law.  *Id.*  Not being expressly authorized by a statute is not the same as being expressly prohibited by statute or violating the law.  Nolan also ignores the fact that his Complaint does not identify any federal, state or local law, rule, or regulation that he alleges WROTB violated by providing health insurance to Board members.

There is also no causal connection between the disclosure of the Board members' health insurance and Nolan's termination.  He alleges he disclosed the Board members' health insurance to WROTB in February and March 2019, and was interviewed by investigative agencies thereafter.  Compl. ¶¶ 23-32, 36, 45.  Nolan's employment was not terminated until December 18, 2020—well over a year and a half later.  Compl. ¶ 16; Dkt. 12-8.  Thus, Nolan's disclosures are "too remote in time to infer a causal relationship" between the disclosures and his termination.  *Peterson*, 2020 WL 2559835, at *9.

## **CONCLUSION**

For the reasons set forth above, and in Defendants' opening Memorandum of Law, this Court should grant Defendants' motion and dismiss Plaintiff's Complaint with prejudice.

10

Dated: February 11, 2022

          **HODGSON RUSS LLP**
          *Attorneys for Defendants*

By _/s/ Matthew K. Parker_
    Daniel C. Oliverio
    Aaron M. Saykin
    Matthew K. Parker
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: (716) 856-4000
*doliverio@hodgsonruss.com*
*asaykin@hodgsonruss.com*
*mparker@hodgsonruss.com*