UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
====================================================

MICHAEL NOLAN,

                              Plaintiff,

        v.                                              **DECISION AND ORDER**
                                                         21-CV-922S

WESTERN REGIONAL OFF TRACK BETTING
CORPORATION, et al.,

                              Defendants.

====================================================

## I.      Introduction

This is a civil rights action from Plaintiff's employment with the Western Regional Off Track Betting Corp. ("OTB") after he learned of allegations of improprieties by the OTB's Board of Directors and Defendant president Henry Wojtaszek (Docket No. 1, Compl.).   Plaintiff raised his concerns about these allegations and assisted in external investigations of OTB.   Allegedly in reaction to Plaintiff's concern and activities, Defendants then excluded Plaintiff from OTB operations despite being its Chief Operating Officer and FOIL Officer and eventually terminated him.

Before this Court is the Motion to Dismiss (Docket No. 12) of Defendants OTB, Wojtaszek, and Chairman of the Board of OTB Richard D. Bianchi.

For the reasons stated herein, Defendants' Motion to Dismiss (Docket No. 12) is granted and this case is dismissed.

## II.     Background

### A.  Alleged Facts from the Complaint

According to the Complaint, from May 2011 until his termination on December 18, 2020, Plaintiff was employed by OTB.  Eventually, OTB promoted Plaintiff to be its Chief

Operating Officer ("COO") with additional duty as its Freedom of Information Law ("FOIL") Officer.   (Docket No. 1, Compl. ¶¶ 10-11, 13-16.)   As FOIL Officer, Plaintiff was responsible for answering lawful inquiries concerning access to OTB records (id. ¶ 14).

OTB is a public benefit corporation (id. ¶ 2), see N.Y. Rac. Pari-Mut. Wag. & Breed. L. §§ 502(1), 519(1)(g).   The Board of Directors of OTB represented fifteen western New York counties and the Cities of Rochester and Buffalo, the member municipalities of the regional OTB (id. ¶ 12).   Defendant Bianchi was the Chairman of the Board of Directors of OTB (id. ¶ 3) and Defendant Wojtaszek was its President and Chief Executive Officer (id. ¶ 4).

During Plaintiff's tenure, OTB came under several investigations, inquiring into what Plaintiff termed "benefit-rich health insurance benefits" to OTB Board members; OTB contracts awarded to politically-connected entities; appointment of a politically connected Board member merely to provide that person with health insurance coverage; improper use of video lottery terminal ("VTL") purse funds; distribution to and personal use of OTB-purchased luxury box and event tickets by friends, family, and political associates; and allegations of bid rigging by Defendant Wojtaszek (id. ¶¶ 18, 21; see id. ¶¶ 19, 20, 47, 30-32).

Plaintiff had significant concerns arising from these investigations (id. ¶ 22).   In or around February and/or March 2019, Plaintiff communicated his concerns (both in writing and orally) to Defendants Wojtaszek and Bianchi and to the OTB Board (id. ¶¶ 23, 24). The Board retained outside counsel to establish the legality of OTB providing insurance coverage to its Board members.   This counsel later opined that it was improper for OTB to furnish health coverage to its Board members and the practice should be discontinued.

(Id. ¶¶ 26-28.)  Defendants, however, continued furnishing health coverage to Board members (id. ¶ 29).

Plaintiff claims that Bianchi and Wojtaszek took Plaintiff's statements as threats and became aggressive and ostracized Plaintiff (id. ¶ 33), while not listening to or acting upon the accusations (id. ¶ 34).  Defendants also lacked whistleblower protections for its employees (id. ¶ 35).

Investigating authorities (the FBI, the United States Attorney's office) later contacted Plaintiff (id. ¶¶ 36-48).  A federal Grand Jury subpoenaed Plaintiff and he personally retained independent counsel (with notice to OTB) to protect his interests in that proceeding (id. ¶¶ 40-42; see Docket No. 16, Pl. Atty. Decl. ¶ 3, Ex. A).  Plaintiff claims that his attorneys' fees for this independent counsel are the responsibility of Defendant OTB pursuant to the New York Public Officers Law (Docket No. 1, Compl. ¶ 43).  Plaintiff reported his contacts with investigators to Defendants (id. ¶¶ 49-52).  Defendants then denied reimbursement of Plaintiff's independent counsel's expenses (id. ¶ 58).

Bianchi and Wojtaszek then allegedly "swiftly, aggressively, and austerely retaliated against Plaintiff and engaged in an ongoing and continuous series of purported retaliatory acts and course of conduct involving harassment, isolation, ostracism, belittling, adverse employment actions, and intimidation," listing examples of retaliatory acts and their consequences (id. ¶ 59).  For example, Defendants excluded Plaintiff from contact with Defendants Wojtaszek and Bianchi, isolating Plaintiff from ordinary operational decisions previously his responsibility as OTB COO and removing him from the chain of command (id.).  He claims that he was threatened with termination, pressured

to resign, and received poor performance ratings (id.).  Defendants also removed Plaintiff as OTB FOIL Officer (id. ¶¶ 60, 63).  Although Plaintiff had earned raises for eight years prior to 2020, he not only did not receive a raise in 2020 but also had his salary halved later in 2020 due to the COVID-19 pandemic while other officers and staff retained their full salaries that year (id. ¶ 63).  Ultimately, Plaintiff claims he was wrongfully terminated, causing him great emotional distress and to incur great financial expenditures (id. ¶¶ 59, 63).

Plaintiff served Defendants with his Notice of Claim on or about September 21, 2020 (Docket No. 1, Compl. ¶ 7, Ex.).  Plaintiff alleges that he served OTB with his first Notice of Claim (during the COVID-19 tolling period, described below, see Docket No 12, Defs. Memo. at 10) and that more than 30 days had elapsed since that service but OTB has refused to pay the claim (Docket No. 1, Compl. ¶¶ 6-8, Ex. A).  Plaintiff next filed his Complaint (dated July 26, 2021) on or about August 12, 2021 (Docket No. 1, Compl.). There, the First Cause of Action alleges violation of Plaintiff's First Amendment rights by all Defendants in retaliating against Plaintiff from his expressed concerns about OTB's alleged improprieties and pending investigations (id. ¶¶ 66-73).  Plaintiff alleges in the Second Cause of Action violation of New York Civil Service Law § 75-b(2)(a) against Defendant OTB for taking adverse personnel actions against Plaintiff (id. ¶¶ 75-80).  The Third Cause of Action alleges common law intentional infliction of emotional distress by Defendants Bianchi and Wojtaszek (id. ¶¶ 82-87).  He claims they subjected him to "deliberate and malicious campaign of harassment by Defendants Bianchi and Wojtaszek on a continuing and ongoing basis" from Plaintiff informing Defendants of his contacts with the FBI to September 3, 2020, when Plaintiff was placed on medical leave for anxiety

and depression (id. ¶ 83).   The Fourth Cause of Action seeks indemnification and/or reimbursement of Plaintiff's attorneys' fees from Defendant OTB under New York Public Officers Law §§ 18 and 19 for representation for his appearance before the federal Grand Jury (id. ¶¶ 89-94).   Finally, the Fifth Cause of Action alleges Defendant OTB violated New York Labor Law § 740 in retaliating against Plaintiff (id. ¶¶ 96-99).

B.  Defendants' Motion to Dismiss (Docket No. 12)

After extending Defendants' time to answer (Docket No. 9; see Docket No. 6), they filed the pending Motion to Dismiss (Docket No. 12[1]).  Responses to this Motion ultimately were due by January 28, 2022, and reply by February 11, 2022 (Docket No. 15; see Docket Nos. 13 (original Scheduling Order), 14 (Motion for Extension of deadlines)).  After timely briefing (Docket Nos. 16, 17), the Motion is deemed submitted without oral argument.

### III.   Discussion

A.  Applicable General Standards

1.  Motion to Dismiss

Under Rule 12(b)(6), the Court cannot dismiss a Complaint unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a Complaint must be dismissed pursuant to

---

[1]In support of their Motion to Dismiss, Defendants submit their attorney's Declaration with exhibits, and their Memorandum of Law, Docket No. 12.

In opposition, Plaintiff submits his Memorandum of Law and his attorney's Declaration with exhibit (the Grand Jury subpoena), Docket No. 16.

Replying, Defendants submit their Reply Memorandum, Docket No. 17.

Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face," id. at 570 (rejecting longstanding precedent of Conley, supra, 355 U.S. at 45-46).

To survive a motion to dismiss, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level," Twombly, supra, 550 U.S. at 555; Hicks, supra, 2007 U.S. Dist. LEXIS 39163, at *5.  As reaffirmed by the Court in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009),

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [Twombly, supra, 550 U.S.] at 570 . . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556 . . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Ibid.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'  Id., at 557 . . . (brackets omitted)."

Iqbal, supra, 556 U.S. at 678 (citations omitted).

A Rule 12(b)(6) motion is addressed to the face of the pleading.  The pleading is deemed to include any document attached to it as an exhibit (such as Plaintiff's first Notice of Claim of September 2020, Docket No. 1, Compl., Ex. A; see Docket No. 12, Defs. Atty Decl. Ex. C), Fed. R. Civ. P. 10(c), or any document incorporated in it by reference, Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985).  It does not include Plaintiff's second Notice of Claim of February 24, 2021 (Docket No. 12, Defs. Atty. Decl. Ex. H; see id., Defs. Memo. at 10) which was not attached to the pleading.  Plaintiff denies that this second Notice of Claim is incorporated in his Complaint (Docket No. 16, Pl. Memo. at 15).

In considering such a motion, the Court must accept as true all the well pleaded facts alleged in the Complaint.  Bloor v. Carro, Spanbock, Londin, Rodman & Fass,

754 F.2d 57 (2d Cir. 1985).  However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true.  New York State Teamsters Council Health and Hosp. Fund v. Centrus Pharmacy Solutions, 235 F. Supp. 2d 123 (N.D.N.Y. 2002).

2.  Statute of Limitations for Claims against OTB

The timing and service of actions against regional OTBs are governed by the New York Racing, Pari-Mutuel Wagering and Breeding Law § 514(5).  Those actions against OTB "shall not be commenced more than one year and ninety days after the cause of action thereof shall have accrued, nor unless a notice of claim as required . . . shall have been served upon the corporation within ninety days after such cause of action shall have accrued," N.Y. Rac. Pari-Mut. Wag. & Breed. L. § 514(5).  Thus, the date of accrual establishes two things:  the timeliness of a litigant's claim against OTB and the timeliness of the Notice of Claim served identifying that claim.

Due to the COVID-19 pandemic, Executive Orders from March 20, 2020, tolled statutes of limitations, 9 N.Y.C.R.R. §§ 8.202.8, 8.202.67; see Cain v. County of Niagara, et al., No. 20CV1710, 2022 WL 616795, at *5-7 (W.D.N.Y. Mar. 2, 2022) (Skretny, J.) (COVID-19 Executive Orders held to toll statutes of limitations).  In Cain, this Court reviewed the series of Executive Orders from then-Governor Andrew Cuomo tolling statutes of limitations (such as for municipal tort liability, N.Y. Gen. Mun. L. § 50-i) from March 20, 2020, in reaction to court closures due to the COVID-19 pandemic, Cain, supra, 2022 WL 616795, at *4, 5.  The initial Executive Order tolled the time for the filing or service of any legal action, notice, or other process or procedure, id. at *5, quoting 9 N.Y.C.R.R. § 8.202.8, with that toll extended by subsequent Executive Orders.  This

7

Court held that tolling of these periods extended the limitation periods, id. at *7.  The parties here agreed that Plaintiff's claims were tolled through December 31, 2020 (Docket No. 12, Defs. Memo. at 12; id., Defs. Atty. Decl. Exs. D, E).

For his state law claims, Plaintiff also needs to serve a timely Notice of Claim against OTB, that is, within 90 days after the cause of action accrued and allege in the Complaint that thirty days had elapsed since the filing of that Notice of Claim, N.Y. Rac. Pari-Mut. Wag. & Breed. L. § 514(1), (5); Morris v. New York Gaming Comm'n, No. 18CV384, 2019 WL 2423716, at *5 n.3 (W.D.N.Y. Mar. 14, 2019) (Foschio, Mag. J.) (Report & Recommendation), adopted, 2019 WL 242303 (W.D.N.Y. June 10, 2019) (Vilardo, J.); New York Racing Ass'n v. Nassau Reg. Off-Track Betting Corp., 29 Misc.3d 539, 543, 909 N.Y.S.2d 866, 869 (Sup. Ct. Nassau County 2010).

Where a public benefit corporation indemnifies its employees, the corporation's limitation period applies to its indemnified employees, see Tanner v. Humphries, No. 6:16-CV-1131, 2019 WL 2232930, at *2 (N.D.N.Y. May 23, 2019), including OTB and its employees, see Broadmeadow Lanes Inc. v. Catskill Regional Off-Track Betting Corp., 151 A.D.2d 631, 631, 543 N.Y.S.2d 91, 92 (2d Dep't 1989).  Thus, the same limitations period for OTB applies to Bianchi and Wojtaszek.

### 3.  Qualified Immunity

Defendants also argue that Bianchi and Wojtaszek should enjoy qualified immunity (Docket No. 12, Defs. Memo. at 19-20) for the claims alleged against them in the First and Third Causes of Action.

When confronted by a claim of qualified immunity, one of the first questions for this Court to resolve is whether the facts, taken in the light most favorable to the party

asserting the injury, show the official's conduct violated a constitutional right.  See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  As required by the Saucier Court, this Court first considered the constitutional question, then considered the qualified immunity question, id.  But the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), overruled Saucier in requiring courts to first determine whether a constitutional violation occurred before considering whether defendants enjoy qualified immunity.  Instead, district courts determine in each case whether to consider first the question of immunity or whether a constitutional violation has occurred, id. at 231-32.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 196 (1982).  "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity."  Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

B.  First Cause of Action, First Amendment Violation

This Court first addresses the sole federal question alleged in this case, the retaliation against Plaintiff for exercising his First Amendment rights (see Docket No. 1, Compl. ¶¶ 66-73).

1.  First Amendment Violation and Civil Rights Litigation Standards

a.  First Amendment and Section 1983

The First Amendment prohibits Congress from making a law abridging the freedom of speech, prohibiting the free exercise of religion, or the right to peaceable assembly, among other fundamental rights, U.S. Const. amend. I.  Alleged here is retaliation for Plaintiff's exercise of freedom of speech.

> "In order to state a claim for retaliation in violation of the First Amendment, a plaintiff must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'  Garcia v. SUNY Health Scis. Ctr., 280 F.3d 98, 106–07 (2d Cir.2001) (internal quotation marks omitted),"

Gonzalez v. Hasty, 802 F.3d 212, 222 (2d Cir. 2015).

Speech by a public employee (or, as argued by Defendants, including employees of the OTB, Docket No. 12, Defs. Memo. at 14) is protected by the First Amendment only when the employee speaks as a citizen on a matter of public concern, Ross v. Breslin, 693 F.3d 300, 305 (2d Cir. 2012) (id.).  Excluded from protection is speech by the employee as part of his official duties, id., citing Garcetti v. Cabellos, 547 U.S. 410, 421, 126 S.Ct.1951, 164 L.Ed.2d 689 (2006) (id.).

Plaintiff's infringed First Amendment rights are applicable to municipalities through incorporation of those rights by the Due Process Clause of the Fourteenth Amendment, see Elkins v. United States, 364 U.S. 206, 213, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); Wolf v. Colorado, 338 U.S. 25, 27-28, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

b.  Section 1983

Title 42 U.S. Code § 1983 provides

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected,

any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

42 U.S.C. § 1983.  Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred,' Baker v. McCallan, 443 U.S. 137, 144, n.3, 99 S. Ct. 2689, 2694, n.3, 61 L.Ed.2d 433 (1979)," Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), here the First Amendment's freedom of speech right.

To prove the elements of a § 1983 cause of action Plaintiff must show that "(1) a person (2) acting under color of state law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States," City of Oklahoma City v. Tuttle, 471 U.S. 808, 829, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (Brennan, J., concurring).  Here, the first two elements are not in question.

c. Statute of Limitations and Accrual of First Amendment Claim

While § 1983 provides the federal cause of action, federal law looks to the law of the state where the action arose for determining the statute of limitations, Wallace v. Kato, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).  Ordinarily, the limitations period for a § 1983 claim is borrowed from New York CPLR for an analogous personal injury claim, that is three years, N.Y. CPLR 214(5); Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 24 (1985).  This Court also applies to New York tolling rules, Cain, supra, 2022 WL 616795, at *4.  A federal action, however, does not require a predicate notice of claim to allege federal civil rights claims, Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988).  Claims against OTB, however, are

governed by the New York Racing, Pari-Mutuel Wagering and Breeding Law and its statute of limitations (as discussed above), see Goodman v. New York City Off-Track Betting Corp., No. 97 Civ. 4708 (DAB), 1999 WL 269989, at *5 (S.D.N.Y. May 4, 1999) (applying notice of claim requirement); but cf. Griffin v. New York City Off-Track Betting Corp., No. 98 Civ. 5278 RCC, 2002 WL 252758, at *5 (S.D.N.Y. Feb. 20, 2002).

The accrual date of a § 1983 claim, however, is a question of federal law not resolved by reference to state law, Wallace, supra, 549 U.S. at 388 ("the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law," emphasis in original); Smith v. Campbell, 782 F.3d 93, 100 (2d Cir. 2015). A First Amendment retaliation claim accrues when the plaintiff "'knows or has reason to know of the injury which is the basis of his action,' Veal v. Geraci, 23 F.3d 722, 724 (2d Cir. 1994) (citations omitted)," Tolbert v. Rochester City Sch. Dist., No. 6:19CV6433, 2020 WL 1467280, at *5 (W.D.N.Y. Mar. 26, 2020) (Geraci, J.).  "It is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief," Wallace, supra, 549 U.S. at 388, that the cause of action "accrues even though the full extent of the injury is not then known or predictable," id. at 392; Smith, supra, 782 F.3d at 100; 1 C. Corman, Limitation of Actions § 7.4.1, at 526-27 (1991) ("The cause of action accrues even though the full extent of the injury is not then known or predictable," footnotes omitted), quoted in Wallace, supra, 549 U.S. at 391; see Barnett v. City of Yonkers, No. 15-cv-4013, 2018 WL 4680026, at *9 (S.D.N.Y. Sept. 28, 2018) (First Amendment retaliation claim).  As the Wallace Court concluded, "were it otherwise, the statute [of limitations] would begin to run only after a

plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief," 549 U.S. at 391, 386, 387-88.

A First Amendment retaliation claim accrues when "the plaintiff 'either has knowledge of his or her claim or has enough information that a reasonable person would investigate and discover the existence of a claim,'" Bouchard v. Olmsted, 775 F. App'x 701, 703 (2d Cir. 2019) (quoting Gonzalez v. Hasty, 802 F.3d 212, 220 (2d Cir. 2015)). The point of accrual is not when the plaintiff utters the protected speech "'but rather when he suffers retaliatory action as a result of that speech,'" Tolbert, supra, 2020 WL 1467280, at *5 (quoting Hughes v. Anderson, No. CV09-4042 ADS WDW, 2012 WL 3062155, at *7 (E.D.N.Y. May 31, 2012)).

A possible exception to the know or should have known accrual is if the harm alleged is continuing, Harris v. City of N.Y., 186 F.3d 243, 248 (2d Cir. 1999) (denial of promotion on civil service list). "When the plaintiff brings a Section 1983 claim challenging a discriminatory policy, 'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.' Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir.1994) (quotation marks omitted)," Shomo v. City of N.Y., 579 F.3d 176, 181 (2d Cir. 2009) (Eighth Amendment deliberate indifference claim). "To trigger the continuing violation doctrine . . . , the plaintiff 'must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy.' Harris, 186 F.3d at 250," Shomo, supra, 579 F.3d at 181. This test screens out claims asserting a string of discrete acts of unconstitutional conduct or claims that fail to allege acts that occur within the limitations period, id. at 182.

The continuing violation doctrine, however, does not apply to retaliation or discrimination claims, <u>Dimitracopoulos v. City of N.Y.</u>, 26 F. Supp.3d 200, 212 (E.D.N.Y. 2014) (Weinstein, J.); <u>Harris v. Board of Educ. of City Sch. Dist. of City of N.Y.</u>, 230 F. Supp.3d 88, 96 (E.D.N.Y. 2017) (Docket No. 17, Defs. Reply Memo. at 2).

d. <u>Monell</u> Supervisory Liability

For Plaintiff's First Amendment claim, Defendants argue that he did not allege a policy or practice for municipal liability against OTB (Docket No. 12, Defs. Memo. at 15-16)

"A municipality may not be held liable under § 1983 solely because it employs a tortfeasor," <u>Board of County Comm'rs of Bryan County, Okla. v. Brown</u>, 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).  This is based in part on the text of that section that imposes liability upon the person who deprived a federal right, <u>Bryan County</u>, <u>supra</u>, 520 U.S. at 403.  The Supreme Court also noted § 1983's legislative history, that Congress had concern whether it could impose liability upon a municipality for the conduct of others, <u>id.</u> (quoting <u>Pembaur v. Cincinnati</u>, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), citing <u>Monell v. Department of Soc. Serv.</u>, 436 U.S. 658, 665-83, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).

For § 1983 claim, to prevail against a municipality (or a public benefit corporation like OTB, <u>e.g.</u>, <u>Morris v Off-Track Betting Corp.</u>, No. 92CV320, 1993 WL 124701, at *1 (W.D.N.Y. Apr. 15, 1993) (Elfvin, J.); <u>McIntyre v. NuHealth—Nassau Univ. Med. Ctr.</u>, No. 11CV3934, 2011 WL 4434227, at *4 & n.4 (E.D.N.Y. Sept. 19, 2011) (public benefit corporations are municipal entities for purposes of § 1983, citing cases)), Plaintiff must allege that actions were taken under color of law (not contested here), the deprivation of

constitutional or statutory rights, causation, damages, and that an official municipal policy caused the constitutional injury, <u>Roe v. City of Waterbury</u>, 542 F.3d 31, 36 (2d Cir. 2008); <u>see also</u> <u>Batista v. Rodriquez</u>, 702 F.2d 393, 397 (2d Cir. 1983); <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); <u>Monell</u>, <u>supra</u>, 436 U.S. at 694 (plaintiff must identify the municipal policy or custom that caused plaintiff's injury) (<u>id.</u>); <u>Morris v. New York Gaming Comm'n</u>, <u>supra</u>, 2019 WL 2423716, at *5 (<u>Monell</u> policy and custom requirement applies to OTB as a public benefit corporation).   That policy or custom must be "the moving force" behind violation of federal rights, <u>City of Canton v. Harris</u>, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (<u>id.</u>).   Plaintiff also needs to show that the policy or custom proximately caused the deprivation, <u>Owen v. City of Independence</u>, 445 U.S. 622, 633, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (<u>id.</u>).

> "In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" <u>Davis v. City of New York</u>, 228 F.Supp.2d 327, 336 (S.D.N.Y. 2002), <u>aff'd</u>, 75 Fed. Appx. 827 (2d Cir. 2003).  Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." <u>Newton [v. City of N.Y.</u>, 566 F. Supp.2d 256 (S.D.N.Y. 2008]</u>, 566 F.Supp.2d at 271; <u>see also</u> <u>City of Oklahoma [City] v. Tuttle</u>, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  (plurality opinion)); <u>Brogdon v. City of New Rochelle</u>, 200 F.Supp.2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").  "The Supreme Court has identified at least two situations that constitute a municipal policy: (1) where there is an officially promulgated policy as that term is generally understood (<u>i.e.</u>, a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter of State law, has final policymaking authority in the area in which the action was taken." <u>Newton</u>, 566 F.Supp.2d at 271 (footnote omitted).

<u>Dellutri v. Village of Elmsford</u>, 895 F. Supp. 2d 555, 565 (S.D.N.Y. 2012).

A "general and conclusory allegation of a municipal policy or custom fails to state a facially plausible <u>Monell</u> claim," <u>Valdiviezo v. Boyer</u>, 752 F. App'x 29, 31 (2d Cir. 2018); <u>Bryant v. Monroe County</u>, No. 19CV6474, 2022 WL 103889, at *7 (W.D.N.Y. Jan. 11, 2022) (Siragusa, J.).

### 2. Parties' Contentions

Defendants first argue that Plaintiff's claims are time barred and Plaintiff failed to serve a timely Notice of Claim upon OTB for his state law claims (Docket No. 12, Defs. Memo. at 9-12).  This Court defers consideration of arguments on the timing of the Notice of Claim for the state law claims since federal claims do not require a predicate Notice of Claim, <u>Felder</u>, <u>supra</u>, 487 U.S. 131.

Applying the tolled date from first Notice of Claim due to the COVID-19 pandemic of December 31, 2020 (Docket No. 12, Defs. Atty. Decl. Exs. E, D), Defendants contend that Plaintiff's timely claims arose after December 21, 2019 (or 90 days before the toll began on March 20, 2020) and most of his alleged free speech infringements occurred in October and December 2019, before this accrual date (Docket No. 12, Defs. Memo. at 10-11).  The lone alleged action after December 21, 2019, was Plaintiff's termination on September 21, 2020 (<u>id.</u> at 10, 11).  Plaintiff, however, never asserted his termination in either of his Notices of Claim (<u>id.</u> at 11).

Defendants assert that Plaintiff merely makes conclusory allegations of retaliatory conduct in attempting to allege an OTB custom or policy (<u>id.</u> at 14, 15; Docket No. 17, Defs. Reply Memo. at 6-7), <u>see</u> <u>Ortega v. New York City Off-Track Betting Corp.</u>, No. 97 Civ. 7582 (KMW), 1999 WL 342353, at *6 (S.D.N.Y. May 27, 1999); <u>Estes-El v. State Dep't of Motor Vehicles Office of Admin. Adjudication Traffic Violation Bureau</u>,

No. 95 Civ. 3454 (JFK), 1997 WL 342481, at *4 (S.D.N.Y. June 23, 1997).  Plaintiff did not allege that he was speaking as a private citizen to state a claim under his First Amendment rights; his statements about alleged OTB improprieties were in his official capacity (Docket No. 12, Defs. Memo. at 16).  Defendants fault Plaintiff for not alleging a causal connection between his speech and any non-time barred adverse employment action, here his termination months after his speech and retaliatory actions (id. at 16-17).  Defendants also argue that Plaintiff has not alleged an official policy or custom, thus failing to allege Monell supervisory liability (id. at 14-18).  They further contend that Plaintiff had not alleged Bianchi or Wojtaszek violated his speech rights in their individual capacities, since Wojtaszek was not on the OTB Board that voted to terminate Plaintiff and Bianchi while Board chairperson voted to terminate, he did so as one of the fourteen unanimous Board members and in his official capacity (id. at 18-19; id., Defs. Aff. Decl. Ex. F, at 4).  They deny that the actions leading to the termination vote were sufficient to constitute constructive discharge (id. Defs. Memo. at 19).

Defendants next invoke qualified immunity for Bianchi and Wojtaszek because Plaintiff failed to allege a constitutional violation against them (id. at 19-20), Ross, supra, 693 F.3d at 304-05 (because plaintiff was speaking in her official duties, individual defendants enjoyed qualified immunity).

Plaintiff responds that his claims are within the relevant statute of limitations because Plaintiff claims the continuing harm doctrine applies (Docket No. 16, Pl. Memo. at 5, 6).  Arguing that all claims accrued under the continuing harm doctrine on or about September 3, 2020, when Plaintiff was forced to take Family and Medical Leave Act leave (the last alleged retaliatory act, Docket No. 1, Compl. ¶ 83), Plaintiff contends he had had

until December 2, 2021 (one year and ninety days later) to commence this action (Docket No. 16, Pl. Memo. at 6, 4-5, 2), <u>see</u> <u>Neufeld v. Neufeld</u>, 910 F. Supp. 977, 982 (S.D.N.Y. 1996), concluding that his August 2021 Complaint is timely.

Plaintiff argues that he alleges the existence of an OTB custom or policy that resulted in adverse employment action (Docket No. 16, Pl Memo. at 14-15; Docket No. 1, Compl. ¶ 71).  Further, he contends that his speech was on a matter of public concern, hence protected under the First Amendment (Docket No. 16, Pl. Memo. at 11-12).

Defendants reply that Plaintiff's timely claims are those after December 21, 2019, from the first Notice of Claim (Docket No. 17, Defs. Reply Memo. at 2; <u>see</u> Docket No. 12, Defs. Memo. at 10 (calculating limitations period)).  They deny that continuing violation doctrine applies to his First Amendment retaliation claim to somehow revive claims from earlier incidents (Docket No. 17, Defs. Reply Memo. at 2, citing cases), <u>see</u> <u>Lozada v. County of Nassau</u>, No. 16-CV-6302(JS)(AYS), 2021 WL 1209740, at *7 (E.D.N.Y. Mar. 31, 2021); <u>Harris v. Board of Educ.</u>, <u>supra</u>, 230 F. Supp.3d at 98.

Even if the continuing harm doctrine applies, Defendants argue that Plaintiff has not alleged timely conduct to reach earlier, otherwise untimely events (<u>id.</u> at 3).  Plaintiff did not assert his termination in either the first Notice or second Notice of Claim (alleging claims from Plaintiff taking medical leave prior to his termination, Docket No. 12, Defs. Atty. Decl. Ex. H) to preserve that as a timely event (Docket No. 17, Defs. Reply Memo. at 3-4).  Alternatively, Defendants renew their contention that Plaintiff's speech was not constitutionally protected (<u>id.</u> at 5-7).

### 3.  Timeliness of Plaintiff's First Amendment Claims

#### a.   Applying Limitations Period

This Court first determines when Plaintiff's claims in the First Cause of Action accrued to start the running of the limitation periods.  Neither side is correct on the accrual date for these claims.  Defendants determine the limitations period by working backward from the August 20, 2021, Complaint (Docket No. 12, Defs. Memo. at 10, 12).  This manner of calculation is erroneous rather than determining the date of accrual as required by the New York Racing Pari-Mutuel Wagering and Breeding Law § 514(5).  The date of accrual under that statute starts limitations period.  An action against OTB "shall not be commenced more than one year and ninety days after the cause of action thereof shall have accrued, nor unless a notice of claim as required . . . shall have been served upon the corporation within ninety days after such cause of action shall have accrued," N.Y. Rac. Pari-Mut. Wag. & Breed. L. § 514(5).

Plaintiff counters that accrual occurred with the last act of retaliation, applying state law establishing accrual (Docket No. 16, Pl. Memo. at 4, 5-6; Docket No. 1, Compl. ¶ 83).  His First Cause of Action here, however, is a First Amendment retaliation claim with its accrual date governed by federal law, Smith, supra, 782 F.3d at 100; Tolbert, supra, 2020 WL 1467280, at *5.  "The mere fact that the effects of retaliation are continuing does not make the retaliatory act itself a continuing one," Deters v. City of Poughkeepsie, 150 F. App'x 10, 11 (2d Cir. 2005) (summary Order).

Applying that federal standard, Plaintiff's First Amendment retaliation claims accrued on the alleged first retaliatory act when Bianchi and Wojtaszek began ostracizing Plaintiff and was aggressive toward him when he raised OTB improprieties (Docket No. 1,

Compl. ¶ 33), occurring sometime after March 1, 2019 (see id. ¶ 25).  Plaintiff alleged in his first Notice of Claim that his claim began in April 2019 (id., Ex. A).  Plaintiff's claim accrued in March or April 2019 with the beginning of harassment following expressions of concern about potential improprieties.

Giving Plaintiff the benefit of the latest date of accrual, this Court finds accrual occurred no later than April 30, 2019, and under the federal accrual standard, Plaintiff's First Amendment claim is time barred.

b.   Continuous Violation

On the other hand, Plaintiff argues that the continuing harm doctrine renders his otherwise untimely incidents timely by the subsequent timely event (Docket No. 16, Pl. Memo. at 3-6).  He alleges that this retaliation was continuous (Docket No. 1, Compl. ¶¶ 59-60), pointing to the last continuous act (in September 2020 when he was compelled to take FMLA leave due to anxiety and stress from work, completing the retaliation) as when accrual occurred, concluding that his August 2021 Complaint is timely (Docket No. 16, Pl. Memo. at 5-6, 4; Docket No. 1, Compl. ¶ 83).  Plaintiff also argues that whether this was continuous action was a question of fact that is beyond resolution in a Motion to Dismiss (Docket No. 16, Pl. Memo. at 3).

This is not the case; accrual for a § 1983 or First Amendment claim is governed by federal law and not New York law, Wallace, supra, 549 U.S. at 388.  Federal accrual occurs when Plaintiff has sufficient facts to file suit, not when every possible violation against him has occurred.  Otherwise, as concluded by the Wallace Court, Plaintiff would dictate the running of the statute of limitation by determining when he has been harmed

enough, "placing the supposed statute of repose in the sole hands of the party seeking relief," id. at 391 (quoting 1 C. Corman, Limitation of Actions, supra, § 7.4.1).

Federal accrual starts from the earliest incident that indicates Plaintiff had a complete cause of action, that is a basis for filing suit, and it need not include every subsequent event to allege the full extent of his injury, see Smith, supra, 782 F.3d at 100; Wallace, supra, 549 U.S. at 388 (plaintiff could file suit "as soon as the allegedly wrongful arrest occurred"), 391.  Thus, accrual of Plaintiff's claim is not delayed until all injuries occurred.  It is the earliest act, not the last act, for all the elements of a claim to have it accrue.  Here, the earliest date is the first retaliatory ostracism sometime in March or April 2019; for calculation purposes, accrual is deemed to run no later than April 30, 2019.

Plaintiff cites Neufeld v. Neufeld, supra, 910 F. Supp. 977, 982 (Docket No. 16, Pl. Memo. at 6), for accrual of continuing harm claims but that court applied New York law, which differs from the federal standard, as to when claims accrue for a diversity claim for intentional infliction of emotional distress, id., as Plaintiff alleges in his Third Cause of Action.  The federal standard, however, applies to his First Cause of Action alleging First Amendment retaliation.

He also cites Monsour v. New York State Office for People with Developmental Disabilities, No. 1:13CV339, 2014 WL 975604 (N.D.N.Y. Mar. 12, 2014) (id.), where Judge Thomas McAvoy applied the continuing violation doctrine ("an 'exception to the normal knew-or-should-have known accrual date,'" quoting Harris, supra, 186 F.3d at 248 (discrimination in application of civil service list)) to plaintiff Jeffrey Monsour's § 1983 claims, Monsour, supra, 2014 WL 975604 at *5, 3.

The New York State Office for People with Developmental Disabilities defendants in Monsour contended that the timeline of events was "obscurely defined" but provided benchmarks that determined the accrual of Monsour's claim, id. at *5.  Judge McAvoy, however, rejected this and held that Monsour's claim of continuing violation raised issues of fact that could not be resolved in a Rule 12 Motion to Dismiss, id. at *6 (see id. at 3).

Plaintiff here argues that his claim nevertheless is timely because of the subsequent continuing harm accrued his claim at the last event (id. at 5-6).  Cases from the Eastern District of New York cited by Defendants state that the continuing harm doctrine was not applicable to retaliation claims, e.g., Dimitracopoulos, supra, 26 F. Supp.3d at 212; Lozada, supra, 2021 WL 1209740, at *7.

The continuing violation doctrine is an exception from the general rule that accrual of a federal claim begins when a litigant knows or should have known injury first occurred and does not require all subsequent acts to complete accrual.  That doctrine does not apply to retaliation claims.  Plaintiff here knew or should have known the harm at the initial act of retaliation.  For his First Amendment claim, that accrual thus occurred at the first instance of retaliation no later than April 30, 2019.

c.   Application of Proper Accrual Event

Applying the one-year, ninety-day OTB limitation period (or 455 days) from April 2019, when Plaintiff alleged in the Notice of Claim the beginning of his ostracism and Defendants' aggression, Plaintiff's August 2021 Complaint is untimely.  Taking April 30, 2019, as accrual date, a timely Notice of Claim ordinarily would have been due by July 29, 2019, ninety days later, N.Y. Rac. Pari-Mut. Wag. & Breed. L. § 514(5).  But

such a Notice of Claim is not a prerequisite for a federal cause of action, Felder, supra, 487 U.S. 131.

The analysis then is the timeliness of a federal Complaint.  Thus, Plaintiff's Complaint against OTB and its officers alleging violation of Plaintiff's First Amendment rights then would be due by July 29, 2020 (or one year and ninety days from April 30, 2019), regardless of whether a timely Notice of Claim was served, cf. id.  Next, factoring in the COVID-19 toll, this July 29, 2020, date is extended to December 31, 2020 (or for 153 days), as stipulated by the parties (see Docket No. 12, Defs. Memo. at 12; id. Defs. Atty. Decl. Exs. D, E).  Despite this stipulation, the August 12, 2021, Complaint (Docket No. 1) alleging First Amendment retaliation thus is too late.

This accrual date is unaffected by the Executive Orders which tolled only the statutes of limitations or the service deadline for filing Notices of Claim.  Accrual is the starting point for establishing the timeliness of claims; it is when Plaintiff first was injured. These Executive Orders did not alter the facts of when claims accrued.  These Orders merely altered the running of limitations periods from that accrual date and when Plaintiff could seek recourse (by serving a Notice of Claims and the Complaint).

Defendants' Motion to Dismiss (Docket No. 12) the First Cause of Action alleging retaliatory conduct prior to his termination on statute of limitations grounds is granted. With dismissal on this ground, this Court need not consider whether Plaintiff alleged a policy or custom of OTB for liability under Monell, whether he spoke on matters of public concern as an officer of OTB to assert his First Amendment claims, or whether the individual Defendants warrant qualified immunity for the constitutional claims.

C. State Law Claims

Next, this Court determines whether to exercise supplemental jurisdiction over Plaintiff's remaining claims arising under New York State statutes or common law. For this Court to retain jurisdiction over these claims first requires exercise of supplemental jurisdiction over these claims, 28 U.S.C. § 1367.

1. Standards for Supplemental Jurisdiction

Subject matter jurisdiction over these state law claims may be raised by the parties or by this Court sua sponte, Lyndonville Sav. Bank & Trust v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000); LaChapelle v. Torres, 37 F. Supp. 3d 672, 680 (S.D.N.Y. 2014). This Court must examine its jurisdiction at any point in the proceeding, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (the district court has "to consider throughout the litigation whether to exercise its jurisdiction over the case"); see 13D Charles A. Wright, Arthur R. Miller, Edward H. Cooper, and Richard D. Freer, Federal Practice and Procedure § 3567.3, at 412 (Jurisd. rev. 3rd ed. 2008).

The parties have not expressly addressed whether this Court should exercise supplemental jurisdiction over the Second through Fifth Causes of Action. These Causes of Action include the nucleus of operative facts similar to the First Cause of Action, assertions of retaliation under various New York statutes and common law for Plaintiff identifying improprieties and cooperating in investigations of alleged wrongdoing at OTB or seeking reimbursement for legal expenses incurred during at least one investigation of OTB.

Under 28 U.S.C. § 1367, this Court may exercise supplemental jurisdiction over Plaintiff's state law claims, see Klein v. London Star Ltd., 26 F. Supp. 2d 689, 692

(S.D.N.Y. 1998), or may decline to hear these supplemental state law claims, 13D Federal Practice and Procedure, supra, § 3567.3, at 397.  Under § 1367(c), this Court declines to exercise supplemental jurisdiction if all original jurisdiction claims were dismissed, 28 U.S.C. § 1367(c)(3); see 13D Federal Practice and Procedure, supra, § 3567.3, at 400, 428-29.  This Court retains discretion to exercise supplemental jurisdiction even after dismissal of original federal jurisdiction claims, 13D Federal Practice and Procedure, supra, § 3567.3, at 432.

> 2.  Application

The sole basis for original federal jurisdiction, Plaintiff's First Amendment retaliation claims, has been dismissed above.  This Court therefore **declines to exercise** supplemental jurisdiction over the remaining state law claims because the original jurisdiction claim no longer exists, 28 U.S.C. § 1367(c)(3); see 13D Federal Practice and Procedure, supra, § 3567, at 332, § 3567.3, at 428-31.  Under § 1367(d), the pendency of this action tolled the running of any statute of limitations for a state court action.  Dismissal at this stage may not prejudice Plaintiff in commencing a state court action since the accrual of claim rules for these state claims differ from the standard for his federal claim.  At this early stage in this case this Court also has not invested substantial resources on these state claims, cf. 13D Federal Practice and Procedure, supra, § 3567.3, at 434-35.

These state law claims are dismissed without prejudice, see id. § 3567.3, at 410-11.  Thus, Defendants' Motion to Dismiss (Docket No. 12) the remaining state law claims is granted and this case is dismissed.

## IV.    Conclusion

When Plaintiff's First Amendment retaliation claims accrued dictates whether they are timely under OTB's statute of limitations period.  Under federal claim accrual standards, this accrual question further turns on whether allegations of continuing violation alter accrual to include to later, more timely incidents.  This Court holds here that Plaintiff's claims alleging First Amendment retaliation run from the first alleged instance of retaliation, accruing no later than April 30, 2019.  Plaintiff's August 2021 Complaint is time barred.  Therefore, Plaintiff's First Cause of Action for First Amendment retaliation is dismissed as untimely and Defendants' Motion to Dismiss (Docket No. 12) this cause of action is granted.

Thus absent an original jurisdiction claim, this Court also declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses them without prejudice.  Thus, Defendants' Motion (id.) to dismiss the Second through and Fifth Causes of Action is granted.

Therefore, Defendants' Motion to Dismiss (Docket No. 12) is granted and the case is closed.

## V.    Orders

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 12) is GRANTED.

FURTHER, the Clerk of Court is DIRECTED to close this case.

SO ORDERED.

Dated:          October 12, 2022
                Buffalo, New York

<u>s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge